# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

GARY JONES,

    Petitioner,

v.

UNITED STATES OF AMERICA,

    Respondent.

CASE NO. 2:18-CV-1730
CRIM. NO. 2:15-CR-00226
CHIEF JUDGE EDMUND A. SARGUS, JR.
MAGISTRATE JUDGE KIMBERLY A. JOLSON

## REPORT AND RECOMMENDATION

Petitioner, a federal prisoner, brings this Motion to Vacate under 28 U.S.C. § 2255. (Doc. 106). This matter is before the Court on the Motion to Vacate, Respondent's Response in Opposition, Petitioner's Reply, and the exhibits of the parties. For the reasons that follow, the undersigned **RECOMMENDS** that the Motion to Vacate under 28 U.S.C. § 2255 (Doc. 106) be **DISMISSED**.

## I. BACKGROUND

Beginning in 2009, Petitioner devised a scheme in which he defrauded individuals who had lost or were in danger of losing their homes to foreclosure. (Doc. 75, ¶ 1). As part of that scheme, Petitioner represented that he could eliminate or modify mortgages held by banks to prevent foreclosures or regain ownership of foreclosed properties. (*Id.*, ¶¶ 1–2). With an investment company, North American Realty Services Corporation ("NARSCOR"), Petitioner marketed the scheme as a "mortgage amelioration" program. (*Id.*, ¶ 3).

To participate in the program, individuals were required to pay an application fee, typically $7,995. (*Id.*, ¶ 4). Although Petitioner and NARSCOR represented that the fee was fully refundable and would be kept in an escrow account, the money was actually deposited in

bank accounts controlled by Petitioner who used that money for his own personal benefit. (*Id.*, ¶¶ 4, 6). As a result, when individuals requested refunds, they could not get their money back. (*Id.*, ¶ 7).

On April 10, 2017, Petitioner pleaded guilty pursuant to the terms of his negotiated Plea Agreement to Counts 10, 21, and 23 of a 25-count Indictment charging him with mail fraud, engaging in monetary transactions in property derived from specified unlawful activity, and failure to file an income tax return. (Docs. 75, 77). On May 11, 2018, this Court issued an Amended Judgment sentencing Petitioner to an aggregate term of 74 months incarceration to be followed by three years supervised release and ordering restitution in the amount of $2,173,084.95 plus $479,596.03 in unpaid taxes. (Doc. 101).

On December 18, 2018, Petitioner filed this Motion to Vacate under 28 U.S.C. § 2255, alleging that his former defense counsel was ineffective in negotiating his plea agreement and in representing him at sentencing. (Doc. 106). The Motion is fully briefed and is now ripe for resolution.

## II. STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2255(a),

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

To obtain relief under 28 U.S.C. § 2255, a prisoner must allege either "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of

fact or law that was so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (internal quotation marks omitted).

In addition, "it is well-established that a § 2255 motion 'is not a substitute for a direct appeal.'" *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013) (quoting *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003)). Accordingly, if a claim could have been raised on direct appeal, but was not, the Court will not consider the claim via a § 2255 motion unless the petitioner shows: (1) cause and actual prejudice to excuse his failure to raise the claim previously; or (2) that he is "actually innocent" of the crime. *Ray*, 721 F.3d at 761 (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)).

### III. DISCUSSION

Plaintiff raises four claims of ineffective assistance of counsel, arguing that: (1) his guilty plea was not knowing, intelligent, or voluntary due to inaccurate advice from his attorney; (2) he was denied the effective assistance of counsel at sentencing; (3) his attorney performed in a constitutionally ineffective manner by failing to challenge venue; and (4) he was denied the effective assistance of counsel because his attorney failed to object to the government's breach of the terms of the Plea Agreement at sentencing. The Undersigned addresses each of these arguments in turn.

"In all criminal prosecutions," the Sixth Amendment affords "the accused … the right … to Assistance of Counsel for his defence." U.S. Const. amend. VI. "Only a right to effective assistance of counsel serves the guarantee." *Couch v. Booker*, 632 F.3d 241, 245 (6th Cir. 2011) (citation and quotations omitted). The United States Supreme Court set forth the legal principals governing claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 556 (1984). *Strickland* requires a movant claiming ineffective assistance of counsel to demonstrate

that his counsel's performance was deficient and that he suffered prejudice as a result. 466 U.S. at 687. To show deficient performance, a petitioner must demonstrate that his counsel's representation "'fell below an objective standard of reasonableness.'" *Richardson v. Palmer*, 941 F.3d 838, 856 (6th Cir. 2019) (quoting *Strickland*, 466 U.S. at 688). "Regarding prejudice," a petitioner "must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Richardson*, 941 F.3d at 856 (quoting *Premo v. Moore*, 562 U.S. 115, 121 (2011)). "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 689).

### A. Guilty Plea

Petitioner asserts that his guilty plea was not knowing, intelligent, or voluntary, because his attorney did not advise him regarding the issue of relevant conduct and its effect on his potential sentence under the Plea Agreement. According to Petitioner, defense counsel promised him that he would be held accountable only for the loss amounts connected with the charges in Counts 10, 21, and 21, or $242,045.80. Petitioner maintains that he did not learn until after he obtained a copy of the PreSentence Investigation Report that, because of his relevant conduct, he would receive a 16-point increase in his recommended guideline sentence under U.S.S.G. § 2B1.1(b)(1)(I)[1] for an aggregate amount of loss of $2,233,478.95. (*See PreSentence*

---

[1] U.S.S.G. § 2B1.1(b)(1)(I) provides in relevant part:

> Larceny, Embezzlement, and Other Forms of Theft; Offenses Involving Stolen Property; Property Damage or Destruction; Fraud and Deceit; Forgery; Offenses Involving Altered or Counterfeit Instruments Other than Counterfeit Bearer Obligations of the United States
>
> \*\*\*
>
> (b) Specific Offense Characteristics

*Investigation Report*, ¶¶ 44, 45). Implicit in this argument is that, but for defense counsel's advice, Petitioner would have gone to trial rather than plead guilty.

A petitioner may challenge the entry of a plea of guilty on the basis that counsel's ineffectiveness prevented the plea from being knowing and voluntary. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). *Strickland*'s two-part test applies to challenges to guilty pleas based on a claim of ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Sparks*, 852 F.2d at 884. First, a petitioner raising such a claim must first show that counsel's advice was not within the range of competence demanded of attorneys in criminal cases. *Hill,* 474 U.S. at 59; *Sparks*, 852 F.2d at 884.

Second, a petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. A petitioner makes this showing by presenting "contemporaneous evidence, rather than after-the-fact assertions, "to substantiate a defendant's expressed preferences." *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017).

For example, in *Lee*, the petitioner asserted that he had been prejudiced by his counsel's failure to inform him that he would be deported based on his guilty plea; if he had known that he would be deported as a result of his plea, he argued that he would have gone to trial instead. "In the unusual circumstances of" *Lee*, "[t]here [was] no question that deportation was the determinative issue in Lee's decision whether to accept the plea deal." *Id.* Contemporaneous evidence indicated that he "asked his attorney repeatedly whether there was any risk of

---

(1) If the loss exceeded $6,500, increase the offense level as follows:

Loss (apply the greatest)                    Increase in Level

\*\*\*

(I)  More than $1,500,000                    add 16[.]

5

deportation from the proceedings." *Id.* And he demonstrated the importance of the issue of deportation at his plea colloquy:

> When the judge warned him that a conviction "could result in your being deported," and asked "does that at all affect your decision about whether you want to plead guilty or not," Lee answered "Yes, Your Honor." When the judge inquired "how does it affect your decision," Lee responded "I don't understand," and turned to his attorney for advice. Only when Lee's counsel assured him that the judge's statement was a "standard warning" was Lee willing to proceed to plead guilty.

*Id.* at 1968 (internal citations and alterations omitted). Finally, "[a]t the time of his plea, Lee had lived in the United States for nearly three decades, had established two businesses in Tennessee, and was the only family member in the United States who could care for his elderly parents—both naturalized American citizens." *Id.* "In contrast to these strong connections to the United States, there [was] no indication that he had any ties to South Korea; he had never returned there since leaving as a child." *Id.* Based on this "substantial and uncontroverted evidence," the Court concluded that Lee had demonstrated "a reasonable probability that, but for his counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 1969 (citation, quotations, and alterations omitted).

Ultimately, to demonstrate prejudice, "'a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.'" *Pilla v. United States*, 668 F.3d 368, 373 (6th Cir. 2012) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010)). "A defendant without any viable defense will be highly likely to lose at trial. And a defendant facing such long odds will rarely be able to show prejudice from accepting a guilty plea that offers him a better resolution than would be likely after trial." *Lee*, 137 S. Ct. at 1966.

Assuming for the sake of argument that counsel's performance was deficient, Petitioner has not, and cannot, demonstrate prejudice here. First, *Lee*'s "general proposition" that a

6

"defendant without any viable defense … will rarely be able to show prejudice from accepting a guilty plea that offers him a better resolution than would be likely after trial," *id.*, applies here. As best the Undersigned can tell, Petitioner makes no argument and cites no evidence suggesting that he had a viable defense to the twenty-five counts brought against him in the Indictment. To the contrary, the record demonstrates that the Government's case against Petitioner was strong. (*See, e.g.*, Doc. 75-1 (detailing facts supporting Petitioner's conviction); Doc. 105, PAGEID # 633 ("Q. Did your investigation reveal any evidence that defendant successfully modified or eliminated any mortgages? A. No."); Doc. 115-1, ¶ 12 (emphasizing the difficulty of defending Petitioner against charges of tax evasion given that Petitioner did not file tax returns during the relevant period and did not make any tax payments)). Petitioner, therefore, faces "long odds" to demonstrate that he suffered prejudice as a result of accepting a guilty plea, *Lee*, 198 S. Ct. at 1966.

Second, Petitioner offers no evidence, let alone contemporaneous evidence, that, but for his counsel's alleged deficiencies, he would have gone to trial rather than pleading guilty. *Cf. id.* at 1967 ("Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences."). Indeed, Petitioner barely offers a conclusory, *post hoc* assertion that he would have gone to trial rather than plead guilty if defense counsel had informed him that relevant conduct would be attributed to him for purposes of sentencing. (*See* Doc. 119, PAGEID # 830–31 ("Had my attorney defined what 'relevant conduct' was prior to me signing the written plea agreement and entering a guilty plea before receiving the PSR, I would have never been led down 'prim rose lane' into an agreement that in reality had no benefit to me as well as relieving the government of proving my

7

guilt beyond a reasonable doubt.")). Bare, *post hoc* assertions like this are insufficient to establish prejudice. *See Lee*, 198 S. Ct. at 1967; *Neill v. United States*, 937 F.3d 671, 679 (6th Cir. 2019) (finding no prejudice where "the contemporaneous evidence" did not support the petitioner's *post hoc* assertions); *United States v. Pola*, 703 F. App'x 414, 421 (6th Cir. 2017) ("Here, in contrast with the substantial evidence presented in *Lee*, we have only Pola's *post hoc* assertions. Here, for the first time in his reply brief, we have Pola's argument that the government's case was hardly insurmountable and that he could have asserted substantial defenses to the charged offense. Even assuming Pola's attorney's advice was deficient, the record simply does not establish, by contemporaneous evidence, that Pola would not have entered the *Alford* plea had he known that he would not be sentenced to time served and would not be granted opportunity for voluntary departure to Canada."); *Pilla*, 668 F.3d at 373 ("Pilla cannot [show prejudice] merely by telling us now that she would have gone to trial then if she had gotten different advice.").

Third, contemporaneous evidence contradicts Petitioner's allegation of prejudice. At the plea hearing, the Court conducted a thorough Rule 11 colloquy, advising Petitioner of: all of the elements of the offenses charged, the maximum penalties he faced, and all of the rights he was waiving by entry of his guilty plea. (Doc. 104, PAGEID # 531–38). Plaintiff swore that:

- He had ample time to discuss his guilty plea with defense counsel and had reviewed with counsel his potential defenses. (Doc. 104, PAGEID # 528).

- He was guilty. (*Id.*, PAGEID # 528–29).

- He had discussed with his attorney everything he knew about the case and believed that his attorney had all of the facts and information necessary to provide proper legal advice. (*Id.*, PAGEID # 530–31).

- He was satisfied with counsel's advice and representation. (*Id.*, PAGEID # 531)

8

- He understood that the sentencing guideline range would not be a guarantee of the sentence that might be imposed. (*Id.*, PAGEID # 536–37).

- He agreed with the statement of facts attached to the Plea Agreement. (*Id.*, PAGEID # 543–44).

"Solemn declarations in open court carry a strong presumption of verity," and "[t]he subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal …" *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Because Petitioner offers, at best, "conclusory allegations unsupported by specifics" to contradict contemporaneous, sworn statements, he cannot demonstrate prejudice as a result of defense counsel's alleged ineffective assistance.

Based on the foregoing, would it have been rational for Petitioner to go to trial rather than plead guilty if he had known that relevant conduct would be attributed to him for purposes of sentencing? *Cf. Pilla*, 668 F.3d at 373 (citation and quotations omitted) ("[T]o obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances."). On the record before the Court, the Undersigned thinks not. First, Petitioner has cited no contemporaneous evidence that "might support the conclusion that he placed particular emphasis on [the issue of relevant conduct] in deciding whether or not to plead guilty," *Lee*, 198 S. Ct. at 1965 (citation and quotation omitted); *see also Pola*, 703 F. App'x at 421 (distinguishing the holding in *Lee* based on the fact that "deportation was clearly the determinative issue in Lee's decision to plead guilty"). Second, as discussed above, Petitioner was faced with a twenty-five-count indictment to which he had little, if any, defense. *Cf. Lee*, 198 S. Ct. at 1966 ("A defendant without any viable defense will be highly likely to lose at trial. And a defendant facing such long odds will rarely be able to show prejudice from accepting a guilty plea that offers him a better resolution than would be likely after trial."). Third, by entry of his guilty plea, Petitioner substantially reduced his potential

9

prison exposure and obtained the dismissal of multiple charges against him, as well as the government's agreement not to pursue any additional charges based on the activities charged. (*See* Doc. 75). Despite facing a maximum sentence of 20 years, Petitioner obtained a 74-month sentence, well below the guideline range of 87–108 months. (*See* Doc. 102). Under these circumstances, and on the record before the Court, Petitioner has not demonstrated that it would have been rational for him to go to trial instead of pleading guilty. His ineffective assistance claim fails as a result.

### B. Sentencing – Amount of Loss

Petitioner asserts that he was denied the effective assistance of counsel at sentencing because his attorney failed to object to the Court's misapplication of the sentencing guidelines in determining the amount of loss attributed to him. (Doc. 106, PAGEID # 753–56). He complains that he should have been credited $399,000 for money he refunded to the alleged victims, $494,022 in payments he made to NARSCOR or Darrel Robinson, and $289,000 for alleged victims "outside the NARSCOR Group." (*Id.*, PAGEID # 756).

At the outset, Respondent contends that Petitioner procedurally defaulted this claim because he did not raise it on direct appeal. (Doc. 115, PAGEID # 794). In its view, Petitioner is "attempt[ing] to avoid the consequences of his default by masking his assignment of error to the sentencing Court beneath a thin veneer of alleged ineffective assistance." (*Id.*).

Respondent's legal argument finds some support in Sixth Circuit case law. Courts in this Circuit are skeptical of habeas petitioners' efforts to cloak procedurally barred claims under the guise of ineffective assistance of counsel. *See, e.g.*, *United States v. Luke*, No. 615CR00010GFVTEBA1, 2018 WL 6567073, at *3 (E.D. Ky. Mar. 21, 2018), *report and recommendation adopted*, No. 615CR0010GFVTEBA, 2018 WL 5818350 (E.D. Ky. Nov. 7,

2018) (concluding that, "[w]hile Defendant's aforementioned allegation is framed as an ineffective assistance of counsel claim, Defendant's allegation is, in fact, a sufficiency of the evidence argument" and enforcing the plea agreement's provision waiving the right to collateral attack); *Camacho v. United States*, No. 1:07 CR 0603, 2011 WL 6181469, at *2 (N.D. Ohio Dec. 13, 2011) ("Mr. Camacho's three grounds for relief are direct challenges to the terms of the Plea Agreement. While presumptively cloaked in terms of a collateral attack on the effectiveness of counsel, Mr. Camacho actually seeks to challenge the terms of Guideline enhancements and departures upon which he had already stipulated in the Plea Agreement. By the very terms of the Plea Agreement Mr. Camacho waived any right to challenge his sentence unless the punishment was in excess of the statutory maximum or it represented a sentence beyond the advisory Sentencing guideline range. Because Mr. Camacho's sentence was below the statutory maximum of life imprisonment, and within the advisory guideline range, he has waived his right to make the challenges he now seeks under the guise of a § 2255 ineffective assistance of counsel claim."). But the record here is mixed and supports the conclusion that Petitioner, in part, is attempting to bring an ineffective assistance of counsel claim. (*See, e.g.*, Doc. 106, PAGE ID # 754 ("Defense Counsel should have been knowledgeable of U.S.S.G § 2B1.1. And had [he] possessed the requisite knowledge he would have immediately recognized that the Sentencing Court had misstated subsection (iv) of Special Rules to Commentary note 3(F). Counsel's silence highlights his deficient knowledge.")).

Petitioner's ineffective assistance claim regarding his counsel's performance at sentencing is without merit. Contrary to Petitioner's assertions, (*see id.*, PAGEID # 753–56), defense counsel objected to the calculation of loss indicated in the PreSentence Investigation Report in Petitioner's Sentencing Memorandum based on similar, if not the same, arguments that

11

Petitioner now raises in his brief, (*see* Doc. 93, PAGE ID # 400–02). Further, defense counsel developed the same arguments at sentencing. (*See* Doc. 105, PAGEID # 664–67, 674–77). He presented the testimony of Gary Moll, a certified public accountant, to support his argument that the amount of loss should be credited in the amount of $366,000 in funds that had been returned to NARSCOR, $494,022 in funds paid to NARSCOR and Robinson, (*id.*, PAGEID # 558–64), and for additional sums that had been returned to alleged victims, (*id.*, PAGEID # 566–67). Moll calculated a total loss of $1,371,257.95. (*Id.*, PAGEID # 572, 574).

Unfortunately for Petitioner, the Government presented the testimony of Shawn Mincks, a special agent with the IRS Criminal Investigation Division. Mincks testified that a "conservative estimate" of the amount of loss was $2,223,478.95. (PAGEID # 618–19). He explained why that figure was conservative:

> It doesn't consider all of the people who entered into this mortgage amelioration program that ultimately lost their houses because they didn't take other actions that they could have taken because they believed that Mr. Jones was going to take care of this problem for them, so then a lot of people lost houses as a result of that. So it does not take into account all of those which is in the multimillion dollar range.

(*Id.*, PAGEID # 619). Defense counsel cross-examined Mincks on the failure to interview 190 of the alleged victims (*id.*, PAGEID # 634–35) and regarding refunds sent by the Petitioner, (*id.*, PAGEID # 638–644, 655–57). But the Court rejected the arguments Petitioner presents again here. (*Id.*, PAGEID # 677–79).

In short, defense counsel presented the Court with relevant evidence and legal authority supporting Petitioner's calculation of loss and cross-examined the Government's witness regarding the same. Despite defense counsel's advocacy, the Court adopted the Government's position. Given that defense counsel raised the same arguments that Petitioner recycles here, Petitioner has failed to demonstrate that defense counsel's performance was objectively

12

unreasonable. Nor has he adequately demonstrated that defense counsel's performance at sentencing prejudiced him. His ineffective assistance claim, therefore, fails.

**C. Venue**

Petitioner asserts that he was denied the effective assistance of counsel because his attorney failed to challenge venue on charges of money laundering. (Doc. 106, PAGEID # 757).

The Court disagrees. Counts 14–21 of the Indictment charged Petitioner with violations of 18 U.S.C. § 1957, by knowingly engaging or attempting to engage in a monetary transaction through a financial institution affecting interstate commerce in criminally derived property of greater than $10,000.00, such property having been derived from the unlawful activity of mail fraud. (Doc. 1, PAGEID # 6).[2] An action based on this charge may be brought in "any district in which the financial or monetary transaction is conducted" or "any district where a prosecution for the underlying specified unlawful activity could be brought, if the defendant participated in the transfer of the proceeds of the specified unlawful activity from that district to the district where the financial or monetary transaction is conducted." 18 U.S.C. § 1956 (i)(A), (B); *see also United States v. Myers*, 854 F.3d 341, 349–50 (6th Cir. 2017) (finding that venue was appropriate in Michigan, where the proceeds of the money laundering scheme, i.e., stolen vehicles, were obtained before being taken outside of the state). Defendant explained as much to Petitioner. (Doc. 115-1, PAGEID # 808 ("It was explained to Mr. Jones that venue could be where any part of the act occurred. Mr. Jones readily acknowledged that the monies involved in both the relevant conduct and totality of the indictment were received by him in the State of

---

[2] Specifically, Count 14 charged Petitioner with depositing $15,990 into the Fifth Third Bank on November 18, 2010; Count 15 charged Petitioner with depositing $15,990 into the Fifth Third Bank on December 20, 2010; Count 16 charged Petitioner with depositing $15,990 into the Fifth Third Bank on July 11, 2011; Count 17 charged Petitioner with depositing $15,990 into the PNC Bank on August 8, 2011; Count 18 charged Petitioner with depositing $15,990 into the PNC Bank on September 30, 2011; Count 19 charged Petitioner with depositing $15,990 into the PNC Bank on November 18, 2011; Count 20 charged Petitioner with depositing $22,485 into the PNC Bank on November 25, 2011; and Count 21, to which Petitioner pleaded guilty, charged him with depositing $15,990 into the PNC Bank. (*Id.*)

Ohio.")). And Petitioner admitted that he deposited money obtained from his fraudulent scheme into bank accounts he controlled, and that all acts substantially occurred within the Southern District of Ohio. (Doc. 75-1, PAGEID # 350). As a result, there was no basis for defense counsel to challenge venue. *See* 18 U.S.C. § 1956 (i)(A), (B); *Myers*, 854 F.3d at 349–50.

Defense counsel did not perform in a constitutionally ineffective manner in failing to make a frivolous challenge to the Court's venue. Petitioner, therefore, has failed to establish he was denied the effective assistance of counsel.

### D. Sentencing – Acceptance of Responsibility

Finally, Petitioner contends that defense counsel was ineffective because he failed to challenge the Government's breach of the Plea Agreement at sentencing. (Doc. 106, PAGEID # 758–60). According to him, the Plea Agreement provided for a three-level reduction in offense level for acceptance of responsibility, but defense counsel failed to challenge the Government's decision to move only for a two-level reduction. (*Id.*).

Petitioner's argument is without merit. The Plea Agreement is silent as to Plaintiff receiving credit for acceptance of responsibility. (*See generally* Doc. 75). In fact, other than an agreement as to the recommended base offense level and the application of a one-level enhancement under U.S.S.G. § 2S1.1(b)(2)(A), it explicitly provides that "[t]he parties make no representations as to the defendant's criminal history computation or any other guidelines that may apply." (*Id.*, ¶ 10(a)-(c)). Further, it states that "[n]o additional promises, agreements, or conditions have been made relative to this matter other than those expressly set forth herein, and none will be made unless in writing and signed by all parties." (*Id.*, ¶ 17).

At the plea hearing, defense counsel noted that the Plea Agreement did not acknowledge Petitioner's acceptance of responsibility and asked the Court to "recognize[] that Mr. Jones has

14

accepted his responsibility by entering a plea." (Doc. 104, PAGEID # 545–46). The Court responded:

> COURT: Right. . . . There's some language that might indicate waiting too long to plead, but particularly if both sides have agreed… that shouldn't be an issue.
>
> MS. KIM: No, Your Honor.
>
> COURT: . . . I don't think that should be any kind of a problem.

(*Id.*, PAGEID # 546). While the parties and the Court discussed Petitioner's acceptance of responsibility, no mention was made of whether Petitioner would receive a one-point reduction for timely notifying the Government of his intention to enter a guilty plea under U.S.S.G. § 3E1.1(b). (*See id.*, PAGEID # 545–46).

The PreSentence Investigation Report recommended that Petitioner obtain a two-point reduction under U.S.S.G. § 3E1.1(a) for his acceptance of responsibility. (PreSentence Investigation Report, ¶ 74). Prior to sentencing, defense counsel objected and requested an additional one-level reduction under U.S.S.G. § 3E1.1(b), (Doc. 93, PAGEID # 402–03), but the Government opposed that request, because Petitioner had rejected several plea offers and waited until the eve of trial to sign the Plea Agreement, (Doc. 92, PAGEID # 384–85). At sentencing, the Court recognized that Petitioner was entitled to "two levels off his offense level for acceptance of responsibility," but concluded that he could not apply an additional one-level reduction under U.S.S.G. § 3E1.1(b) because the Government declined to make a motion as required by the Guidelines. (Doc. 105, PAGEID # 679–80).

At base, the Plea Agreement was silent as to the issue of Petitioner's acceptance of responsibility. The Government, therefore, was under no obligation to move for an additional one-point reduction under U.S.S.G. § 3E1.1(b). And because the Government had no obligation

15

to do so, defense counsel had no basis to argue that it breached the Plea Agreement at sentencing. On these facts, defense counsel's performance was not objectively unreasonable.

Nor can Plaintiff demonstrate prejudice as a result of being denied a one-level reduction in offense level pursuant to U.S.S.G. § 3E1.1(b). The Court determined that Petitioner's final offense level was 28 with a criminal history category of two, resulting in a guideline range of 87–108 months. (Doc. 105, PAGEID # 694). It then departed downwards and sentenced Petitioner to 74 months imprisonment. (*Id.*, PAGEID # 726).

If Petitioner had received a one-level reduction in offense level pursuant to U.S.S.G. § 3E1.1(b), his final offense level would have been 27. With a criminal history score of two, this would have resulted in a guideline range of 78–97 months, still higher than the 74-month sentence Petitioner received. As a result, Petitioner's ineffective assistance claim fails.

## IV. CONCLUSION

For the reasons set forth above, it is **RECOMMENDED** that this action be **DISMISSED**.

### Procedure on Objections

If any party objects to this *Report and Recommendation*, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(B)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

IT IS SO ORDERED.

Date: February 10, 2020 /s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE